UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANNA M. BAILEY, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CAUSE NO. 3:04-CV-415 RM ) |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant | ) ) |

OPINION and ORDER

Anna M. Bailey seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act. The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons that follow, the court affirms the Commissioner's decision.

Ms. Bailey applied for disability insurance benefits on June 23, 2000, claiming that she had been disabled since August 7, 1997, due to osteoarthrosis in her back, hip, right knee, and right shoulder accompanied with pain as well as depression, asthma, and Crohn's disease. The claim was denied initially and on reconsideration. Ms. Bailey testified at a hearing before an ALJ on August 16, 2001. Edward Pagella, a vocational expert ("VE"), also testified. The ALJ concluded that

Ms. Bailey had the residual functional capacity to perform the full range of sedentary work before the expiration of her insured status, and so is not disabled as defined by the Social Security Act.  After the Appeals Council denied Ms. Bailey's request for review, she sought judicial review from this Court.

Judicial review of the Commissioner's final decision is limited. 42 U.S.C. § 405(g); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993).  A court must sustain the ALJ's findings so long as they are supported by substantial evidence.  42 U.S.C. 405(g); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002); Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001).  The term "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  A court may not substitute its judgment for that of the ALJ by reconsidering the facts, reweighing the evidence or resolving factual disputes.  Scott v. Barnhart, 297 F.3d at 593; Maggard v. Apfel, 167 F.3d 376, 378 (7th Cir, 1999).  The reviewing court may not reconsider credibility determinations made by the ALJ unless those determinations are patently wrong.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

While the ALJ needn't discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), the decision

must demonstrate the path of his reasoning and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). Remand is required if the reviewing court cannot discern an "accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

In May 1997, Ms. Bailey injured her right knee while working. She was treated with anti-inflammatory medication, injection, and physical therapy. When the pain didn't subside, Dr. Kay, Ms. Bailey's treating orthopedic surgeon, performed an arthroscopy with patellar cartilage shaving and lateral release of her right knee on August 5, 1997. The same month, Ms. Bailey began physical therapy. She made slow but steady improvement in her range of motion, strength, and pain complaints. By February 1998, she had achieved increased mobility in her knee and decreased edema to within normal limits. Dr. Kay's clinical notes from this time period indicate that he recommended several times that she could complete sedentary or office work. Ms. Bailey's restrictions included no lifting greater than ten pounds, no squatting, no kneeling, and no climbing. Between March 1997 and July 1998, Ms. Bailey was also treated for anxiety and depression by Dr. Seizys, her family physician.

On July 7, 1998, Dr. Yergler performed a right knee arthroscopy, shaving, lateral release, and maquet osteotomy without complications. In

October 1998, Ms. Bailey underwent manipulation of a rigid right knee under anesthetic. Dr. Yergler's January 1999 notes indicate that Ms. Bailey was instructed to ride a stationary bicycle for twenty minutes at a time and to complete a home exercise plan. In August 1999, Dr. Yergler noted that an x-ray revealed that the osteotomy had healed well.

Ms. Bailey was in a car accident in July 2000, sustaining injuries to her right shoulder and right foot. Ms. Bailey has a long-standing problem with migraines, which was exacerbated by a head injury she received in the accident.

Ms. Bailey's insured status expired on June 30, 1999.  She was thirty-seven years old at that time, and she was thirty-nine at the time of the ALJ's decision.  Ms. Bailey has a graduate equivalency diploma (GED) and has worked as a home health aide and as an aide on a school bus for handicapped children.  Her previous jobs all required at least light exertion.

Ms. Bailey raises several issues for review.  First, she asserts that the ALJ erred in failing to consider a medical assessment by Dr. Yergler. That June 12, 2000 assessment limited Ms. Bailey to one hour walking or sitting and a maximum of three hours sitting, standing, and walking combined.  It also restricted her to lifting no more than five pounds.  The ALJ did not err by failing to consider the assessment: the assessment is from 2000 and Ms. Bailey's insured status expired in 1999.

4

Next, Ms. Bailey claims that the ALJ erred in finding that she did not have a severe mental impairment. In March 1997, Ms. Bailey complained of anxiety to Dr. Seizys, her family physician. At first, Dr. Seizys prescribed Xanax. When Ms. Bailey continued to complain of anxiety and depression, Dr. Seizys prescribed a combination of Serzone and BuSpar. While Dr. Seizys's report indicates that Ms. Bailey struggled with anxiety and depression from March 1997 to July 1998, the report also indicates that Dr. Seizys believed the medications he prescribed were effective in treating this condition. Dr. Seizys's report makes no mention of any problems with concentration or other ways in which her mental condition would limit her ability to work.

The only evidence of diminished ability to concentrate came from Ms. Bailey's statement at the hearing that her concentration was "no good.." (AR at 269). When questioned by the ALJ, Ms. Bailey acknowledged that she was able to work until 1999 despite her struggle with anxiety and depression. Other than lack of concentration, Ms. Bailey hasn't alleged any way in which anxiety and depression have limited her ability to work. The ALJ makes determinations as to a witness's credibility, and this Court does not reweigh credibility unless the ALJ's decision is patently wrong. Zurawski, 245 F.3d at 887. The ALJ's finding is not inconsistent with Dr. Seizys's report when read as a

5

whole, so the ALJ did not err in finding that Ms. Bailey had no severe mental impairment.

Ms. Bailey next argues that the ALJ inappropriately discredited her testimony that her knee swells and turns blue and that she must elevate her knee for three to four hours a day. In his decision, the ALJ stated that there was no evidence of swelling, discoloration, or the need to elevate her knee during the time she was insured. Ms. Bailey points to two instances in her medical records in which she was instructed to elevate her leg.  The first was on July 18, 1996. It appears that Ms. Bailey hurt her leg when she bumped it against a wheelchair she was pushing. Ms. Bailey hasn't shown that this was anything more than an isolated incident; in fact, her doctor referred to her condition at that time as "nothing significant." (AR 148). The only other time she was instructed to elevate her knee was in June 16, 1997, which was after her accident at work, but before she was very far along in physical therapy. In September 1997, Ms. Bailey was told she could return to work. The medical records indicate that her edema was reduced to normal levels by February 1998.  These facts tend to support the proposition that Ms. Bailey had no continuing need to elevate her leg for several hours a day before her insured status expired.

Ms. Bailey points to several other places in the record where it was noted that she had swelling or edema. She argues that a need to elevate

her knee can be implied from these notations. Most of these notations only refer to "mild swelling," and one even indicated that she could return to work within a week. (AR 118). The medical records simply do not corroborate Ms. Bailey's statement that she needed to elevate her knee several hours a day prior to the expiration of her insured status. There is no indication that the ALJ faulted Ms. Bailey for Dr. Yergler's failure to respond to the ALJ's questions other than by sending medical records. The ALJ's decision simply reflects that he found Ms. Bailey's statements regarding elevation of her knee to be self-serving and unsupported by any objective medical evidence.

Ms. Bailey next notes that the VE testified that no work was available for her. That testimony was given under the assumption that she had to elevate her knee several hours a day. The vocational expert testified that she could perform the full range of sedentary work if — as the ALJ ultimately found — she didn't have to elevate her leg. She also claimed that the VE's testimony that a moderate impairment in concentration would only reduce the number of jobs available by fifty percent. Since the ALJ found no credible evidence that Ms. Bailey needed to elevate her leg or had problems concentrating, these issues are irrelevant. The vocational expert testified that there were "thousands" of jobs available for her with the impairments and restrictions she was actually found to have by the ALJ. (AR 274).

In addition to the VE's testimony, the ALJ also consulted the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. The regulations provide tables for determining whether a claimant can perform substantial gainful work. Because she was thirty-seven when her insured status expired and thirty-nine at the time of the ALJ's decision, Ms. Bailey was classified as a "younger person." 20 C.F.R. § 404.1563(c). She also has a GED and a residual functional capacity for sedentary work. With these facts, Rules 201.27 and 201.28 of Appendix 2 indicate that she was not disabled. Ms. Bailey does not challenge the ALJ's application of this grid.

Finally, Ms. Bailey argues that the ALJ erred by considering her impairments individually rather than in combination. She claims the ALJ failed to consider that she has Crohn's Disease, asthma, low back pain, migraine headaches, and obesity in addition to her knee problems. Ms. Bailey cites Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993), for the proposition that it is error to isolate impairments. Ms. Bailey presented little or no evidence, however, that her various conditions limited her ability to work or exacerbated her knee condition. She simply testified to having back pain without any explanation how it affects her. She also testified to having headaches, but also stated that they got worse after her accident, which was after her insured status expired. She testified that the drugs she takes for Crohn's Disease make her bones more

8

brittle, but she presented no evidence that this condition would prevent her from doing sedentary work. She also testified that she must avoid doing work that would bring on an asthma attack, but again she presented no evidence that this affects her knee problem or further restricts her ability to do sedentary work. On the contrary, Ms. Bailey testified that she was able to work with this combination of conditions until she hurt her knee. She told the ALJ that she would be working if it were not for her knee injury.

Viewing the record under the standards that govern review by this court, the court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, the decision is AFFIRMED.

SO ORDERED.

ENTERED:  September 25, 2006

　　　　　　　　　　　　　　　　 /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　United States District Court